# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| PATRICIA J. SHANNON,<br>　　　　　　Plaintiff,<br>vs.<br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　　Defendant. | Case No. 2:11-cv-00394-JCM-CWH<br>**REPORT AND RECOMMENDATION**<br>(Motion for Reversal #16)<br>(Cross-Motion for Summary Judgment #19) |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Patricia J. Shannon's application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. Ch. 7. Before the Court is Plaintiff's Motion for Reversal (#16)[1], filed September 30, 2011, and the Commissioner's Opposition and Cross-Motion for Summary Judgment (#19), filed October 26, 2011. The Court also considered Plaintiff's Reply (#22), filed November 8, 2011. This action was referred to the undersigned Magistrate Judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

## BACKGROUND

### I.　　Procedural History

On January 8, 2008, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income alleging she became disabled on August 21, 2006. (A.R. 153-161, 162-167).[2] Her claims were denied initially on April 4, 2008 and upon reconsideration on October 9, 2008. (A.R. 54-57). On June 1, 2009, Plaintiff and her representative appeared for a video hearing before Administrative Law Judge ("ALJ") Edward D. Steinman. (A.R.

---

[1] Refers to the Court's docket number.

[2] A.R. refers to the Administrative Record in this matter. *See* Notice of Manual Filing (#11).

28-53). On August 31, 2009, the ALJ issued an unfavorable decision finding the Plaintiff has not been under a disability, as defined in the Social Security Act, from August 21, 2006 through the date of his decision. (A.R. 14-27). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 28, 2011. (A.R. 1-5). On March 15, 2011, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl. (#1).

## II. The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision on August 31, 2009. (A.R. 14-27). At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2011 and has not engaged in substantial gainful activity since August 21, 2006, the alleged onset date. (A.R. 19, Findings 1-2). At step two, the ALJ found that Plaintiff has the following severe impairments: low back pain, coccyx pain, history of bells palsy, diabetes mellitus, hyperlipidemia, mood disorder NOS, posttraumatic stress disorder, pain disorder, and substance addiction disorder in remission. (A.R. 19, Finding 3). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 20, Finding 4). In making this finding, the ALJ considered the paragraph B criteria in accordance with 20 C.F.R. §§ 404.1520 and 416.920a and found Plaintiff mildly limited in activities of daily living, moderately limited in social functioning, mildly limited in concentration, persistence, and pace, and no episodes of decompensation of extended duration. (A.R. 21, ¶¶ 3-6). Because Plaintiff's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the paragraph B criteria were not satisfied and the ALJ continued with the sequential evaluation process.

The ALJ found Plaintiff capable of performing a residual functional capacity for a reduced range of light work as follows: lift/carry twenty pounds occasionally, ten pounds frequently, sit/stand/walk six hours in an eight-hour workday, with a break every hour for one to two minutes, occasional postural limitations except frequent balancing, frequent overhead reaching on the right

side with no limitation in the left upper extremity, avoid concentrated exposure to hazards, capable of performing simple, repetitive tasks and more complicated detailed tasks, but not complex tasks, limited to no contact with the public, but contact with coworkers and supervisors.  (A.R. 21-22, Finding 5).  At step four, the ALJ found Plaintiff unable to perform her past relevant work as a customer service order clerk based on vocational expert testimony.  (A.R. 25, Finding 6).  At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity.  (A.R. 26, Finding 10).  In doing so, the ALJ defined Plaintiff as a younger individual age 18-49, with at least a high school education, able to communicate in English, and found transferable skills not material to the determination of disability.  (A.R. 26, Findings 7-8).  The ALJ considered Medical-Vocational Rule 202.21, which provides a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a garment folder, bagger, and assembler of small products.  (A.R. 26 ¶ 6).  Based on all of these findings, the ALJ found Plaintiff not disabled and denied her application for a period of disability and disability insurance benefits and supplemental security income.

## DISCUSSION

### I.  Judicial Standard of Review

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  *Id.*  The Ninth Circuit reviews a decision of a District Court affirming, modifying or reversing a decision of the Commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

U.S.C. § 405(g); see also *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

## II. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden,

the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability of nondisability, a determination will be made and no further evaluation is required. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b) and 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[3] If the individual does not have a severe medically determinable

---

[3] SSRs constitute SSA's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appedix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made.  20 C.F.R. §§ 404.1520(h) and 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence such as, all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f) and 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at

SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965.  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  If she is able to do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

### III.    Analysis and Findings

Plaintiff seeks reversal of the ALJ's decision for the following reasons: (1) she received an unfair hearing, (2) the ALJ failed to fully develop the record, (3) the ALJ failed to consider additional evidence, (4) the ALJ failed to consider all impairments, (5) the ALJ improperly discredited opinion evidence, (6) the ALJ failed to consider lay evidence, and (7) the ALJ failed to properly assess her credibility.

#### A.    Unfair Hearing

Plaintiff contends that she was essentially unrepresented at the hearing because a non-attorney representative who was unfamiliar with her case merely agreed with the ALJ.  She argues that this resulted in prejudice because the ALJ did not fully develop the record or thoroughly question the medical expert as he would for an unrepresented claimant.  For example, Plaintiff contends that the ALJ should not have allowed the medical expert to provide an opinion on Plaintiff's credibility and should have inquired as to whether the medical expert based her opinion on the entire record.  In contrast, the Commissioner argues that the Plaintiff presented no evidence that the administrative proceeding was unfair and this is not a situation in which Plaintiff's right to counsel is at issue.  The Commissioner contends there is no prejudice because Plaintiff's counsel provided a representative

from her office who was present at the hearing and assisted Plaintiff in amending the onset date.[4]  In addition, the Commissioner contends that Plaintiff received assistance of counsel prior and subsequent to the hearing, which resulted in the submission of additional evidence.

      A Social Security claimant has the statutory right to be represented by counsel at an administrative hearing.  42 U.S.C. § 406(a)(1).  However, lack of counsel does not affect the validity of a hearing unless the plaintiff can demonstrate "prejudice or unfairness in the administrative proceedings."  *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1988) (citing *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981)).  The Court finds that the absence of Plaintiff's primary counsel at the hearing did not cause prejudice.  She was assisted by a non-attorney representative who was given the opportunity to ask questions.  Additionally, the Court's review of the ALJ's questioning of the medical expert resulted in no evidence of prejudice.  The medical expert's resume was made part of the record at Exhibit 15B allowing review of her qualifications. (AR 125-130).  Although Plaintiff's representative did not ask any questions of the medical expert at the hearing, Plaintiff was given another opportunity to respond to the medical expert's opinion by submitting contentions to the Appeals Council along with the request for review.  (AR 134-152).  Most significantly, the ALJ appears to have diligently approached a lengthy record and focused his questions to the medical expert on issues related to the RFC and specific medical evidence that support it like, Exhibits 2F, 8F, 14F, 16F, 17F, 26F, 28F.  Accordingly, the Court finds that Plaintiff did not demonstrate prejudice or unfairness in the administrative hearing or that Plaintiff's due process right to representation was violated.

                **B.**     **Development of the Record**

     Plaintiff generally alleges that the ALJ failed to fully develop the record.  In response, the Commissioner contends that the ALJ did not have a duty to re-contact the staff at Southern Nevada Mental Health because there are no illegible treatment notes, the opinions were not ambiguous, and there was sufficient evidence in the record to allow the ALJ to make a disability determination.  The Court notes that an ALJ "has a special duty to fully and fairly develop the record and to assure that [a]

---

[4] The Court notes that the ALJ acknowledged the amended onset date in the procedural opening paragraph, but the findings use the original onset date.

. . . claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). However, the ALJ's duty to re-contact a treating physician is triggered only when the record is ambiguous or inadequate. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapatyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)); *see also* SSR 96-5p (requiring the adjudicator to make "every reasonable effort" to re-contact a treating source for clarification of his opinion if he cannot ascertain the basis of the opinion.) The Court finds that the ALJ did not violate his duty to develop the record as the record is neither ambiguous nor inadequate to allow proper evaluation of the evidence in this case.

### C. Additional Evidence

Plaintiff alleges that a January 3, 2008 consultation record diagnosing Plaintiff with schizophrenia and a July 14, 2008 report finding Plaintiff to be a person with a disability under the Americans with Disabilities Act were not considered by the ALJ. The Commissioner argues that this evidence, which was submitted by Plaintiff's counsel subsequent to the ALJ's decision is not new and material evidence because it is duplicate and therefore, had already been considered by the ALJ.

The court may remand for new evidence only if it is "material" and there is "good cause" for plaintiff's failure to submit the evidence within the allotted time. *See* 42 U.S.C. § 405(g); *see also, e.g., Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990); *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (defining materiality as a reasonable possibility of changing the outcome). The Court notes that new evidence was added to the record upon the Appeals Council's denial of Plaintiff's request for review as Exhibits 33F and 34F. (A.R. 4). After reviewing the evidence exhibited as 33F and 34F, the Court finds that it does not constitute new and material evidence warranting remand. Most of it is duplicative of evidence already exhibited in the record; for example, pages one through four of Exhibit 33F are duplicative of page three of Exhibit 20F, page 2 of Exhibit 3F, page three of page seven of Exhibit 27F, and page three of Exhibit 27F, respectively. Additionally, Exhibit 34F consists of a March 30, 2010 assessment from Dr. Rucker that is consistent with his earlier assessment on page three of Exhibit 20F, which was considered by the ALJ. The Exhibit 34F assessment was performed after the ALJ's decision and does not reveal a significant deterioration in Plaintiff's condition. Therefore, the additional evidence submitted subsequent to the ALJ's decision does not warrant a change in the outcome of the Commissioner's decision.

### D.     Impairments Not Fully Considered

Plaintiff alleges that the ALJ failed to consider her schizoaffective disorder at steps two and three. She cites to a November 13, 2007 consultation request to evaluate Plaintiff for schizophrenia based on her report of auditory and visual hallucinations. (A.R. 290).[5] Plaintiff also highlights a March 12, 2008 consultative examination in which Bonnie M. Winkleman, Psy.D., diagnosed Plaintiff with schizoaffective disorder and noted that Plaintiff reported a history of suicidal ideation and hallucinations. (A.R. 357-360). Further, Plaintiff cites the State agency psychological consultant's note on March 27, 2008 that lists schizoaffective disorder under Listing 12.03. (A.R. 365). In response, the Commissioner contends that Plaintiff did not satisfy the medical criteria for a psychotic or affective disorder. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.03-12.04. The Commissioner highlights the opinions of the medical expert and State agency psychological consultant as providing sufficient support for the ALJ's B and C criteria findings at step three.

The ALJ is required to consider all of an individual's medically determinable impairments at step two and applicable listings at step three.[6] Given that several treating and non-treating sources noted a diagnosis of schizoaffective disorder, the ALJ erred in failing to address or take into account all of Plaintiff's mental impairments. The Court notes that the ALJ found severe mental impairments of mood disorder, NOS, and posttraumatic disorder ("PTSD"), and considered listings 12.04 and 12.06. There is no mention of schizoaffective disorder at step two or listing 12.03 at step three. As a result, it is unclear if the ALJ adequately considered the effects of this impairment on Plaintiff's residual functional capacity. Indeed, the reconsideration determinations specifically list "schizophrenic, paranoid and other functional psychotic disorders" as the primary diagnosis. (A.R. 56-57 and 605). Also, a multi-disciplinary evaluation from the Southern Nevada Adult Mental Health Services dated September 7, 2007 noted psychotic symptoms of hallucinations. (A.R. 286).

---

[5] Plaintiff claims the diagnosis of schizoaffective disorder found in a January 21, 2009 mental status exam is mentioned in the ALJ's decision at A.R. 22. The Court's review of that page of the ALJ decision reveals no such mention.

[6] Although not raised as a contention by Plaintiff, the Court notes that the ALJ failed to consider obesity at step two and the RFC in accordance with SSR 02-1p despite treatment notes that reveal Plaintiff is moderately to morbidly obese. (A.R. 623). However, there is no opinion evidence in the record to indicate that Plaintiff's obesity would result in a change to the RFC.

Plaintiff was subsequently submitted for a consultation on January 3, 2008 and found to be impaired for three months based on schizophrenia and PTSD. (A.R. 290-91, 293, 313). A consultative examination performed on March 12, 2008 noted a diagnosis of psychotic disorder based on Plaintiff's report of hallucinations and suicidal ideation, which resulted in difficulty interacting with others during periods of paranoia. (A.R. 360). Additional progress notes reflect that Plaintiff experiences hallucinations when under stress and diagnose her with schizophrenia. (A.R. 411, 502, and 588). On the other hand, an opinion from treating psychologist Patricia A. White, Ph.D., dated June 16, 2008 questions whether Plaintiff's hallucinations are due to substance abuse. (A.R. 433). Also, the discharge assessment from Plaintiff's occupational therapist indicates that treatment for her PTSD, schizophrenia, and history of substance abuse resulted in an improvement in her attention span for difficult tasks, deductive reasoning, and problem solving. (A.R. 499).

Ultimately, the ALJ failed to provide an adequate assessment of this medical evidence to enable the Court to determine if he considered a psychotic disorder at steps two and three. Further, the RFC finding does not adequately define Plaintiff's limitation regarding interacting with others. As a result, it is unclear if the ALJ considered this impairment when establishing social limitations. Additionally, a State agency psychological consultant assessed Plaintiff with schizoaffective disorder and opined that Plaintiff is moderately limited in activities of daily living (A.R. 365-373). The ALJ found Plaintiff mildly limited in activities of daily living, but did not explain why he rejected the State agency psychological consultant's more severe finding. Accordingly, the ALJ erred in failing to adequately discuss the severity and effects of Plaintiff's schizoaffective disorder.

Additionally, the Court notes that the ALJ failed to properly consider Plaintiff's substance abuse at steps two and three. At step two, the ALJ found a severe medically determinable impairment of substance addiction disorder in remission. (A.R. 19). However, by definition, if Plaintiff's substance addiction is in remission, then it cannot be found severe because it would not have more than a minimal effect on her ability to perform basic work activities. *See* SSR 85-28. As such, the ALJ should have specified a time period in which the impairment was severe or cited medical evidence of record that supports classifying it as non-severe. Furthermore, the ALJ failed to evaluate listing 12.09 at step three in accordance with SSR 82-60, which elucidates the evaluation of drug addiction and alcoholism. Finally, the ALJ noted that Plaintiff amended her alleged onset date at the

11

hearing to December 27, 2007, which is subsequent to her substance abuse. (A.R. 17).  This would result in the exclusion of Plaintiff's substance abuse from the step two and three findings.  However, the ALJ proceeded to issue findings based on the original alleged onset date of August 21, 2006.  Therefore, these defects in the steps two and three findings warrant correction upon remand.[7]

### E.    Opinion Evidence

Overall, Plaintiff contends that the ALJ relied on opinion evidence that supports his findings and conclusion while ignoring the opinion evidence to the contrary.  In response, the Commissioner argues that the ALJ properly relied on the opinions of the Plaintiff's treating psychologist, the State agency psychological consultant, and the medical expert over the other opinion evidence.  An ALJ is not required to accept the opinion of any physician if his or her opinion is brief, conclusory, and inadequately supported by clinical findings.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  However, when an ALJ rejects an opinion, he must provide specific, legitimate reasons based on substantial evidence in the record.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  After reviewing the ALJ's evaluation of the opinion evidence, the Court finds that it is not supported by substantial evidence.

First, Plaintiff contends that the ALJ should have given more consideration to the opinion of marriage and family counselor Rhonda Duncombe, M.S., despite the fact that she is a non-acceptable medical source.  In particular, Plaintiff cites Listing 12.00(D)(4) for the proposition that the ALJ is required to seek information from other sources, such as Ms. Duncombe, to determine Plaintiff's capacity to function in a work environment.  20 C.F.R. Part 404, Subpart P, Appendix 1.  The Court notes that Listing 12.00(D) explains the relevant evidence that an ALJ considers at step three, but it does not shift the burden of producing evidence to the Commissioner.  In fact, Listing 12.00(D) states, "[W]e will consider information you provide from other sources when we determine how the established impairment(s) affects your ability to function." 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added).  Consequently, the ALJ may consider Ms. Duncome's opinion to provide insight

---

[7] The Court also notes that the ALJ classified low back pain as a severe medically determinable impairment at step two. (A.R. 19).  However, pain is a symptom not a specific medically determinable impairment.  *See* SSR 96-3p.  The more appropriate finding is mild degenerative disc disease. (A.R. 604, 633-34, 658, and 686).

into how Plaintiff's impairments affect her ability to function, but it cannot establish disability at step three. *See* SSR 06-03p. Nevertheless, even though Ms. Duncome is a non-acceptable medical source, the ALJ is required to assign weight to her opinion and provide an explanation for the weight assigned based on the factors used for acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(b) and 416.927(b). The Commissioner contends that the ALJ gave valid reasons for discounting Ms. Duncome's opinion pursuant to SSR 06-03p. The Court is not convinced. The ALJ made one mention of Ms. Duncome's opinion as part of a summary of the medical expert's testimony at step three.[8] Not only did the ALJ fail to cite her name correctly, but he also failed to state that he agreed with the medical expert's assessment of Ms. Duncome's opinion, as the Commissioner claims. Most importantly, the ALJ failed to provide an evaluation of the relevant factors listed in SSR 06-03p.

Second, Plaintiff contend that the ALJ improperly discounted the opinion of consultative examiner Bonnie M. Winkleman, Psy.D., because Plaintiff's GAF score was in conflict with some of the mental status examination findings. In response, the Commissioner contends that the ALJ gave valid reasons for discounting Dr. Winkleman's opinion and the ALJ was not required to give her opinion any weight at step three. As noted above, the ALJ is required to specify the weight assigned to each opinion in addition to providing reasons for the weight assigned. *See* SSR 96-6p; *see also* 20 C.F.R. §§ 404.1527(f) and 416.927(f). The ALJ's cursory summary of Dr. Winkleman's examination findings and opinion is not sufficient because it does not address all of the relevant factors nor does it explain what weight was assigned. *See* SSR 96-6p (providing that the ALJ may not ignore the opinion of a consultative examiner and must explain the weight given to the opinion in the decision). As a result, the Court is unable to determine how much the ALJ relied on Dr. Winkleman's opinion in relation to the other opinion evidence.

Third, Plaintiff contends that the ALJ gave too much weight to the opinion of medical expert, Miriam Sherman, M.D. Plaintiff alleges that the ALJ did not elicit information regarding Dr. Sherman's qualifications as an expert, asked highly focused questions as if Dr. Sherman had not reviewed the entire record, and improperly considered Dr. Sherman's opinion as to the credibility of

---

[8] The ALJ's decision mentions the medical expert's testimony about Dr. Newcomb's report in Exhibit 28F. (A.R. 20). The Court assumes that the ALJ meant Ms. Duncombe because her psychological evaluation is included in the record as Exhibit 28F.

13

the evidence.  In contrast, the Commissioner contends that Dr. Sherman reviewed the longitudinal medical record and the ALJ was justified in giving great weight to her opinion.  The Court is not persuaded by Plaintiff's arguments that the ALJ did not properly consider Dr. Sherman's qualifications or her statements weighing the evidence.  The ALJ may ask questions of the medical expert regarding specific exhibits in the record to determine what evidence supports her opinion and to resolve conflicts in the record.  However, the Court finds that the ALJ did not specify what weight was assigned to Dr. Sherman's opinion as required by 20 C.F.R. §§ 404.1527 and 416.927.  Although the ALJ summarized part of Dr. Sherman's testimony in his step three analysis, he failed to provide any explanation of the relevant factors pertaining to the weight that an opinion is entitled.  *See* SSR 96-6p (providing that the ALJ considers factors such as supportability, consistency, specialization, and type of source).  Consequently, it is not clear how much the ALJ relied on Dr. Sherman's opinion.  Also, the ALJ appears to have adopted Dr. Sherman's opinion into the RFC finding, which resulted in a vague limitation with respect to Plaintiff's ability to interact with others.  The ALJ limits Plaintiff to "have contact with coworkers and supervisors," but it is unclear how much contact is allowed. (A.R. 22).

Accordingly, the Court finds that the opinion evidence assessment is not supported by substantial evidence.  The ALJ did not specify what weight he assigned to all of the opinions.  He did not provide an explanation of the relevant factors that must be considered when determining the amount of weight to be assigned.  Finally, the ALJ did not provide any analysis resolving the conflict between the opinions to assist the Court in determining the basis for his reliance on some opinions over others.  More than a cursory summary of the examination findings and opinions is needed to satisfy the ALJ's duty to weigh the opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927.

### F. Lay Evidence

Plaintiff alleges that the ALJ's credibility analysis did not take into account the lay evidence consisting of a third-party function report from Plaintiff's mother, Shannon Priscilla. (A.R. 243-250). In response, the Commissioner contends that Ms. Priscilla's testimony regarding whether her daughter's medical condition meets a listing is irrelevant because she is not an acceptable medical

source.[9] Lay testimony regarding an individual's impairments and how her impairments affect her ability to work "is competent evidence that an ALJ must take into account." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also* SSRs 96-7p and 06-03p. An ALJ may choose to disregard lay testimony, but must provide "reasons germane to each witness for doing so." *Id.* The reasons "germane to each witness" must be specific. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513 and 416.913. As long as "arguably germane reasons" for dismissing the testimony are noted and substantially supported by the evidence, the ALJ is not required to explicitly link his determination to those reasons. *Lewis*, 236 F.3d at 512. Here, the ALJ failed to mention Ms. Pricilla's function report in the decision; it is unclear whether or not he considered it in making the credibility finding. The Court's review of Ms. Pricilla's statements indicate that they tend to support Plaintiff's testimony regarding her inability to attend to her personal care needs, limited participation in activities of daily living, and memory and concentration problems that worsen when stressed or not on medication. (A.R. 243-250). Accordingly, the ALJ erred in failing to consider the Exhibit 11E lay evidence in making the credibility finding because it lends support to Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms.

### G.  Credibility

Plaintiff contends that the ALJ engaged in a highly selective reading of the record to highlight evidence supporting his credibility finding. For example, Plaintiff underscores the fact that a Global Assessment of Functioning ("GAF") score is a snapshot in time so it is not unusual for an individual to receive fluctuating GAF scores. Additionally, Plaintiff asserts that the ALJ's reliance on a GAF score ignores her level of functioning over time. The Commissioner alleges that the ALJ provided a valid basis for finding Plaintiff not fully credible in accordance with SSR 96-7p. Specifically, the Commissioner highlighted the fact that Plaintiff's allegations were inconsistent with the objective medical findings, the findings of her treating psychiatrist, and her activities of daily living.

The ALJ is required to engage in a two-step analysis to evaluate credibility: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably

---

[9] The Commissioner characterizes Ms. Pricilla's statements as testimony, but the transcript from the ALJ hearing indicates that she did not testify. Therefore, the Court assumes that the Commissioner is referring to Ms. Pricilla's statements in the Function Report Exhibited as 11E. (A.R. 243-250).

be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the individual's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

Despite Plaintiff's allegation to the contrary, the ALJ provided clear and convincing reasons for finding her not credible. He did not rely on inconsistent objective medical evidence alone, but rather, addressed the seven factors identified in 20 C.F.R. §§ 404.1529(c) and 416.929(c). For example, the ALJ considered the fact that Plaintiff received regular psychological treatment, experienced some improvement in panic attacks while on medication, responded well to therapy for substance abuse, and performs a number of activities of daily living. Additionally, at the hearing, the ALJ thoroughly questioned Plaintiff about her symptoms, side effects of medication, pain, and activities of daily living. (A.R. 37-44). Accordingly, the ALJ provided specific, legitimate reasons for discrediting Plaintiff's statements and the credibility finding is supported by substantial evidence.

### IV.    Conclusion

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion. Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is not supported by substantial evidence under 42 U.S.C. § 405(g) and does not articulate reasons for the findings that satisfy the requisite legal standards. Specifically, the defects at steps two, three, and the opinion evidence assessment warrant correction upon remand.

Based on the foregoing and good cause appearing therefore,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal (#16) be **granted subject to the modification that it be remanded for further proceedings** consistent with the terms of this report and recommendation.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion for Summary Judgment (#19) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 9th day of October, 2012.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge